455 S.E.2d 774

**Scott S. EBLIN and Diane M. Eblin, Appellants,**

v.

**COLDWELL BANKER RESIDENTIAL AFFILIATES, INC.; Pancake Realty Company; Mary Alice Fisher; Ermano Manzo; Sally Brooks Manzo; and Frank E. Sampson, Appellees.**

No. 22239.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1995.

Filed Feb. 17, 1995.

James W. St. Clair, St. Clair & Levine, Huntington, for appellants.

David M. Pancake, Nelson, Hager, Pancake & Heilmann, Huntington, for appellees, Coldwell Banker Residential Affiliates, Inc., and Pancake Realty Co.

John F. Cyrus, Gardner & Cyrus, Huntington, for appellee, Mary Alice Fisher.

George A. Stolze, Huntington, for appellees, Ermano Manzo and Sally Brooks Manzo.

Thomas S. Sweeney, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellee, Frank E. Sampson.

## PER CURIAM:

The appellants in this proceeding, Scott S. Eblin and Diane Eblin, after discovering serious structural defects in the basement of a house which they had purchased a short time before, sued the former owners, the realtors who had been involved in their purchase of the property, the appraiser, and a house inspector who had inspected the house before they closed the transaction. The Circuit Court of Cabell County granted summary judgment to all the defendants except the house inspector, Frank E. Sampson. A jury ultimately considered the case against Mr. Sampson and rendered a verdict in his favor.

In the present appeal, the Eblins claim that the circuit court erred in granting summary judgment to the former owners, the realtors, and the appraiser. They also claim that the trial court should have granted them a new trial against Mr. Sampson.

After reviewing the questions presented, this Court believes that the trial court did err in granting summary judgment in favor of the realtors and the former owners. The Court, therefore, concludes that the judgment of the circuit court, insofar as it relates to those parties, should be reversed. The Court does not believe that the trial court erred in granting the appraiser, Mary Alice Fisher, summary judgment or in refusing to grant the Eblins a new trial against Mr.

Sampson. Accordingly, the judgments in favor of those parties should be affirmed.

In 1988, Scott and Diane Eblin decided to purchase a house in Huntington, West Virginia, which had been listed for sale by the owners, Ermano and Sally Brooks Manzo, with Pancake Realty Company, an affiliate of Coldwell Banker Residential Affiliates, Inc. They then, on or about May 22, 1988, entered into a written agreement to purchase the house for $65,000.00. The contract was made expressly contingent "upon a satisfactory structural inspection."

After the contract was entered into, Frank E. Sampson, a local home inspector, was retained with the consent of the Eblins, by Ed Pancake of Pancake Realty, to inspect the house. On May 31, 1988, Mr. Sampson inspected the house and submitted a written report to Ed Pancake. The report indicated that there were a number of defects in the house, which included vertical cracks at each corner of the stoop, broken downspouts, out-of-level floors, foundations which had apparently moved, and unsatisfactory controls to protect against foundation wetting. The report stated: "No foundation repair is recommended at this time. As a *routine* caution, it is pointed out that repairs could be required in the future."

After receiving Mr. Sampson's report, but before its submission to the Eblins, Mr. Pancake made a number of handwritten notations on it. For example, beside the remark relating to the cracks by the stoop, he said, "normal condition for these houses," and beside the remark that foundation repairs could be required in the future, he said, "recommended on all reports."

When the Eblins received Mr. Sampson's report with Mr. Pancake's notations, they requested a supplemental report from Mr. Sampson on the mechanical systems and certain other parts of the house, and that supplemental report was submitted on or about June 16, 1988. While the report mentioned a garage and a crawl space under a den, it did not focus on the foundation or structure of the house, and in the section on "Foundation and Structure," Mr. Sampson simply referred to his earlier report.

The Eblins continued to pursue the purchase of the property, and on June 8, 1988, Mary Alice Fisher, an appraiser, inspected the property for the lender, Coldwell Banker Residential Mortgages, and submitted an appraisal report which was written on a standard form, FNMA Form 1004. The report noted certain maintenance and mechanical problems, but it said nothing about the structural condition of the foundation or the basement. The report also contained the statement: "The FNMA Form 1004 (10–86) as completed by the appraiser is not an express or implied warranty of heating and cooling systems, plumbing, sewage disposal and waste treatment systems or materials used in construction nor physical condition. It is always advisable to have an improvement inspected by the proper mechanical, electrical, plumbing and structural technicians."

The Eblins, pending the closing of the transaction, visited the house and observed that it was freshly painted and that all walls appeared to be in excellent condition. During the visit, according to the Elbins, Mrs. Eblin was advised by Mrs. Manzo, one of the owners, that there were no problems with the basement.

At length, the Elbins closed the transaction and paid $65,000.00 for the house. They financed the purchase through Coldwell Banker Mortgage Services, Inc., upon the recommendation of Pancake Realty Company.

In early 1990, Mr. Eblin noted that cracks had appeared in the basement wall and that the stairway was twisting and pulling away from the wall. He was subsequently advised by experts that the walls had to be replaced, that the foundation was faulty, and that the entire basement structure had to be torn out because of extreme damage due to excessive underground water.

After learning of the defects in the basement and expending some $35,000.00 to correct them, the Eblins filed suit against Coldwell Banker Residential Affiliates, Inc., Pancake Realty Company, Mary Alice Fisher, Ermano and Sally Brooks Manzo, and Frank E. Sampson. They essentially claimed that Mr. Pancake, who was acting in behalf of the realty companies, had fraudulently misled

them as to the significance of the deficiencies notes on Mr. Sampson's report. They alleged that Mary Alice Fisher, the appraiser, had negligently conducted her appraisal. They alleged that Ermano and Sally Brooks Manzo had concealed long term water damage to the basement walls and had intentionally misled them as to the condition of the property. Finally, they alleged that Frank Sampson, the house inspector, failed to inspect the house properly and failed to warn them of the problems connected with the basement.

As previously indicated, the realtors, the former homeowners, and the appraiser all moved for summary judgment, and the trial court ultimately granted their motions.[1]

The case against Frank E. Sampson, the house inspector, was allowed to proceed to trial. During trial, Mr. Sampson testified that he had been misled in his inspection because the cracks in the basement had been skillfully and artfully camouflaged and covered up with masonry paint. He also testified that he could not see cracks in the walls. At the close of the trial, the jury returned a verdict for him.

At the conclusion of the trial, the Eblins moved for a new trial against all the defendants, and the trial court denied that ruling. It is from that ruling that the Eblins now appeal.

The Eblins' first contention is that the trial court erred in granting the summary judgment motions made by Coldwell Banker Residential Affiliates, Inc., by Pancake Realty Company, by Ermano Manzo and Sally Brooks Manzo, the former owners, and by Mary Alice Fisher, the appraiser.

■ The determination of whether the trial court properly granted the summary judgment motions hinges upon this Court's holdings as to the circumstances under which summary judgment may appropriately be granted. Those circumstances are summarized in syllabus point 3 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), as follows:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*See Lowery v. Raptis,* 174 W.Va. 736, 329 S.E.2d 102 (1985); *Karnell v. Nutting,* 166 W.Va. 269, 273 S.E.2d 93 (1980); *Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782, 247 S.E.2d 712 (1978); and *Anderson v. Turner,* 155 W.Va. 283, 184 S.E.2d 304 (1971).

■ In instituting the action in the present case, the Eblins claimed that Ed Pancake of Pancake Realty Company was an agent, servant, or employee of Coldwell Banker Residential Affiliates, Inc., and/or Pancake Realty Company, and that in his capacity as such, he intentionally and fraudulently misled them concerning the inspection report of Frank E. Sampson by indicating that the deficiencies mentioned in the report were of no consequence. They also infer that the misleading remarks were made for the purpose of inducing them to complete the purchase of the Manzo house.

In *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), this Court discussed at some length fraud as it relates to contracts.

---

1. Apparently, the circuit court subsequently entertained second thoughts about these rulings, as indicated by the following remarks made to the jury at the conclusion of the Sampson trial:

> They [the Eblins] had sued some other people beside him [Sampson]. They had sued the owner of the home, the appraiser and the real estate agent and that was it, I think. And I had dismissed all of them from the suit already. And when you all went out to deliberate I thought maybe you all were thinking maybe somebody else was responsible other than him [Sampson]. You probably discussed that. So, and I may have made an error legally in throwing out one or more of the

> parties. So, they will have a—they can appeal both this decision and my decision in throwing out the other people. Of course, we don't want them to have to appeal if they don't have to. But anyway, you may have wondered why there weren't any other people in this suit and that's why because I ruled as a matter of law that they shouldn't have been a party to the action based upon what they allege in the Complaint and what the depositions said and so forth and so on.
>
> So, I really felt sorry for them [the Eblins] but I didn't know if he [Sampson] was responsible for it or not. Apparently you all have said "no".

In syllabus point 1 of *Lengyel*, the Court stated:

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 (1927).

In the body of the *Lengyel* case, the Court stated:

> It is not essential that the defendant know for a fact that the statement or act alleged to be fraudulent is false. An action for fraud may lie where the defendant either knows the statement to be false, makes the statement without knowledge as to its truth or falsity, or makes it under circumstances such that he should have known of its falsity
>
> . . . .
>
> The complaining party must, generally, have relied upon the representations claimed to be false, but: "It is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff. If the representations contributed to the formation of the conclusion in the plaintiff's mind, that is enough...."

*Id.* 167 W.Va. at 277, 280 S.E.2d at 69.

The trial court, in considering the realtors' motion for summary judgment, concluded that the employment of home inspector Sampson by the Eblins, and their consultation with him and obtaining of a supplemental report from him after Ed Pancake made his notations on the first report, relieved the realtors of any responsibility for any misrepresentations which might have been made. In reaching this conclusion, the trial court relied upon the decision of this Court in the case of *Rockley Manor v. Strimbeck,* 181 W.Va. 313, 382 S.E.2d 507 (1989).

In the *Rockley Manor* case, this Court quoted with approval syllabus point 5 of *Jones v. McComas,* 92 W.Va. 596, 115 S.E. 456 (1922), where the Court discussed the so-called "independent investigation doctrine." In that syllabus point, the Court stated:

> Though a purchaser may rely upon particular and positive representations of a seller, yet if he undertakes to inform himself from other sources as to matters easily ascertainable, by personal investigation, and the defendant has done .nothing to prevent full inquiry, he will be deemed to have relied upon his own investigation and not upon the representations of the seller.

Although, at first blush, the *Rockley Manor* case would appear to support the trial court's conclusion that the undisputed fact that the Eblins obtained a second opinion from Mr. Sampson after Mr. Pancake annotated his first report relieved the realtors of any liability arising out of the misleading annotations, however, the Court also indicated that where the independent inspection was of a general nature, or where exercise of reasonable care would not have uncovered the defects, the independent investigation doctrine was not controlling. *See Rockley Manor v. Strimbeck, supra* 181 W.Va. at 315, 382 S.E.2d at 509.

In the present case, it rather clearly appears that Mr. Sampson's inspection was of a general nature and did not focus on the Manzos' basement. Further, his supplemental report, the report upon which the trial court relied to justify the granting of summary judgment to the realtors under the *Rockley Manor* rule, did not pertain to the foundation or basement walls of the Manzo house. Rather, it involved the mechanical systems of the house, and it referred the readers to item "e" of the first report, which was annotated by Ed Pancake, for information on the basement and the crawl space.

In view of the nature of the supplemental report, we believe that the trial court erred in concluding that the independent inspection doctrine contained in *Rockley Manor* relieved the realtors of any responsibility for the potential misleading effect of Mr. Pancake's annotations.

■ In instituting their action against the former homeowners, the Manzos, the Eblins, similar to their complaint against the realtor, claimed that prior to the purchase of the

house they had visited it and had been advised by the Manzos that the basement was in good repair. They also alleged that, after purchasing the house, they discovered that serious cracks in the basement had been painted, plastered, and concealed from their inspection by the Manzos. The clear thrust of their allegations was that the Manzos had intentionally misled them regarding the condition of the house for the purpose of inducing them to purchase the house.

In granting the Manzos summary judgment, the trial court, as in the case of the realtors, found that the independent inspection doctrine set forth in *Rockley Manor v. Strimbeck, supra,* was controlling.

For the same reasons that the independent doctrine in *Rockley Manor* does not relieve the realtors of liability or support summary judgment in favor of the realtors, the Court believes that it does not relieve the Manzos of liability and was improperly considered as a basis for summary judgment in their favor.

■ Overall, the Court believes that at the time the circuit court granted the realtors and the Manzos summary judgment, there were material questions of fact as to whether the Eblins relied upon misrepresentations by Ed Pancake and by the Manzos, or either of them, in deciding to purchase the Manzo house. Under such circumstances, syllabus point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York, supra,* would indicate that the circuit court erred in granting summary judgment to the realty companies and the Manzos.

■ In addition to claiming that the trial court erred in entering summary judgment for landowners and for the real estate companies in this case, the Eblins claim that the circuit court erred in entering summary judgment for Mary Alice Fisher, the appraiser.

The Court disagrees with this contention. All the documents filed in the case suggest that Mary Alice Fisher was employed by the mortgage lender, Coldwell Banker Mortgage Services, Inc., and presented her report to that lender. Further, the report clearly indicates that Mary Alice Fisher did not examine the house for structural integrity, and it contains language indicating that nothing in it should be construed as a comment upon the structural integrity of the house.

In this Court's view, it is not credible or plausible that the Eblins relied upon the appraisal report in deciding to purchase the Manzo house, and given the contents of the appraisal report, the Court cannot conclude that the trial court erred in granting summary judgment for Mary Alice Fisher.

■ Lastly, the Court notes that the Eblins claim that they should be granted a new trial against Frank E. Sampson, the professional who inspected the structural integrity of the house in question.

A review of the record indicates that the trial court allowed trial to proceed against Mr. Sampson and before a jury. During the trial, he introduced evidence suggesting that the defects in the house in question were skillfully camouflaged and suggesting that the actions of the Manzos, the homeowners, or people working for them, had deceived him and had prevented him from discovering the structural defects in spite of his best efforts.

This evidence raised a legitimate jury question as to whether Frank E. Sampson was negligent in conducting his inspection, and the Court believes that the jury reasonably could have concluded that he was either negligent or not negligent. The jury concluded that he was not, and, accordingly, the circuit court entered judgment in Mr. Sampson's behalf.

■ On appeal, the Eblins essentially claim that the outcome of the case might have been different if the parties who were dismissed by way of summary judgment had been tried by the jury along with Mr. Sampson and if evidence relating to their involvement had been introduced to the jury.

In examining the record, the Court cannot find that the Eblins, acting through their attorney, at any point prior to trial attempted to raise the issue of the absence of the parties who had been dismissed on summary judgment. Further, although the Eblins had the opportunity of calling the parties who had been granted summary judgment as wit-

nesses, and had an opportunity to develop the facts relating to their involvement, the Eblins made no such effort during trial.

In this Court's view, the Eblins, by their actions prior to trial and during trial, effectively waived any error relating to the absence of the parties who were granted summary judgment. Therefore, they cannot now complain about the alleged prejudicial effect caused by the absence of the dismissed parties.

■ A subsidiary issue in this case is whether the Eblins timely filed their appeal from the summary judgment rulings.

The summary judgment order granting the Manzos summary judgment was entered on April 16, 1992. The order granting Pancake Realty Company and Coldwell Banker Residential Affiliates, Inc., summary judgment was entered on June 22, 1992. The Eblins did not file the present appeal until March 18, 1994, more than eighteen months after the date of the summary judgment orders. Since the time for filing appeals in this Court is generally four months,[2] the present case raises the issue of whether the appeal time on the summary judgment orders commenced running when they were entered, or whether it commenced running when the trial court denied the Eblins' motion for a new trial.

Not all summary judgment orders commence the running of the appeal time. Where multiple parties are involved in an action and summary judgment is granted as to some of them but not to all of them, Rule 54(b) of the West Virginia Rules of Civil Procedure generally governs the question of whether the order is final and whether the appeal time begins to run. That rule states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In

the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In the syllabus of *Wilcher v. Riverton Coal Company*, 156 W.Va. 501, 194 S.E.2d 660 (1973), the Court stated that:

> Where multiple claims are involved the trial court should not attempt to enter a final judgment until all the claims have been fully adjudicated, and a summary judgment for a defendant under Rule 56(d), R.C.P. on less than all of the plaintiff's claims is not a final judgment and not appealable under Rule 54(b), R.C.P. unless there is an "express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

In *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991), this Court held that in spite of the language of Rule 54(b), and in spite of the case law in this State holding that a summary judgment order was not final unless there was an express determination of no just reason for delay and an express direction for entry of judgment, a party could appeal from a summary judgment order disposing of less than an entire case if the trial court's ruling approximated a final order in its nature and effect. In syllabus point 2 of *Durm*, the Court stated:

> Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] ... entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order

**2.** *See,* W.Va.Code § 58–5–4 and Rule 3 of the    West Virginia Rules of Appellate Procedure.

that the trial court's ruling approximates a final order in its nature and effect.

In the present case, there is a question of whether, given the rule in *Durm,* the appeal time on the summary judgment orders in favor of the realtors and the homeowners began running at the time of the entry of the summary judgments orders.

A close reading of *Durm* indicates that entry of a *Durm*-type order opens up the possibility of an appeal by an aggrieved party. However, there is nothing in that case which indicates that an appeal must be taken by an aggrieved party within the appeal time after entry of a *Durm*-type order. Accordingly, entry of a *Durm*-type order, while allowing an aggrieved party to take an immediate appeal, does not require that such an appeal be taken at that time, and an aggrieved party may take an appeal at any time until the final appeal time in the case expires.

Thus, this Court believes that the Eblins' appeal in the present case was timely filed.

For the reasons stated, the judgment of the Circuit Court of Cabell County is, therefore, affirmed insofar as it relates to Mary Alice Fisher and Frank E. Sampson, it is reversed insofar as it relates to the defendants, Pancake Realty Company, and Coldwell Banker Residential Affiliates, Inc., and Ermano Manzo and Sally Brooks Manzo, and this case is remanded for trial against the Manzos and against the real estate companies.

Affirmed in part; reversed in part; and remanded with directions.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.