523 S.E.2d 837

**P. David BOYER and Winnie Boyer, Plaintiffs Below, Appellants,**

v.

**Thomas R. FITZGERALD and P.C. Emmons, Defendants Below, Appellees.**

No. 25836.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1999.

Decided Nov. 19, 1999.

John A. Proctor, Esq., Fisher and Paesani, L.C., Huntington,, West Virginia and Jack H. Vital, III, Esq., Lockwood, Egnor & Vital, Huntington, West Virginia, Attorneys for Boyers.

Thomas S. Sweeney, Esq., MacCorkle, Lavender & Casey, Charleston, West Virginia, Attorney for Emmons.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Cabell County entered on July 31, 1998. Pursuant to that order, the circuit court entered summary judgment in favor of the defendant, P.C. Emmons, in a negligence action filed by the plaintiffs, P. David and Winnie Boyer. The Boyers alleged that Mr. Emmons, a home inspector, negligently inspected the house which they purchased and as a result, did not report certain structural defects and conditions concerning the basement walls of the home which substantially affected its value and habitability.[1] In this appeal, the Boyers contend that the circuit court erred by granting summary judgment because there are genuine issues of material fact regarding whether Mr. Emmons was

---

**1.** The Boyers also named Thomas R. Fitzgerald, the seller of the home, as a defendant in this action. The Boyers' claims against Mr. Fitzger- ald are still pending in the circuit court, and Mr. Fitzgerald is not a party to this appeal.

negligent in performing his inspection and whether the Boyers' reliance on Mr. Emmons' representations was reasonable under the circumstances.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, we affirm the final order of the circuit court.

I.

In August 1993, David and Winnie Boyer entered into a real estate purchase agreement to purchase a home located in Cabell County, West Virginia, from Thomas Fitzgerald. Prior to purchasing the home, the Boyers requested that P.C. Emmons, a housing inspector, perform an inspection of the entire house. On August 18, 1993, Mr. Emmons, accompanied by Mrs. Boyer and her daughter, inspected the home. .

At the time of the inspection, the cinder block basement walls of the home were partially covered by drywall which had been studded out from the cinder block wall. Because the "interior wall" did not run from floor to ceiling, it was possible to climb a ladder and look over the drywall to inspect the cinder block. However, according to Mrs. Boyer, Mr. Emmons only inspected one small section of the wall and stated that "everything seemed fine."

Following the inspection, Mr. Emmons submitted a written inspection report with a cover letter to the Boyers. The report stated that "[t]he basement is dry. However, it shows signs of having been wet but since it has been recently dry walled the block wall could not be inspected. The outside of the block foundation wall has been sealed, and if the downspout water is directed away from the foundation, the wall stands a better chance of not leaking, assuming it has." The report further advised: "The roof downspouts discharge next to the basement foundation walls. This can cause water problems in the basement. Suggest extending the drains away from the house." Mr. Emmons' report also specifically stated in a disclaimer that "the inspection and report excludes and does not intend to cover any and all components, items and conditions which by the nature of their location are concealed or otherwise·difficult to inspect."

After receiving Mr. Emmons' report, the Boyers arranged to conduct an independent inspection of the basement and foundation walls with the assistance of Gene Roberts, an agent for the seller. Mr. Roberts had been involved with the original construction of the home and had erected the interior drywall. Mr. Roberts cut a two-foot by two-foot hole in the drywall to allow the Boyers to inspect the block wall. Upon inspection, the Boyers discovered a hairline crack which extended at least ten feet. At this time, Mr. Roberts told the Boyers that when the home was being constructed, one of the walls collapsed and this was probably the source of the water which had evidently been in the·basement. Following this inspection, the Boyers purchased the home.

In November 1993, after a heavy rainstorm, the Boyers noticed a large puddle of water had formed on the basement floor along the wall beneath the front of the house. The water recurred in January 1994 with the onset of heavy rains. At that point, the Boyers began removing the drywall in an attempt to discover the source of the problem. Eventually, the Boyers called a local contractor to come and examine the walls. After looking at the basement walls, the contractor advised the Boyers to call a foundation expert.

In late May 1994, the Boyers contacted Robert Blankenship, a foundation specialist and the general manager of Affordable Construction Company. Unbeknownst to the Boyers, Mr. Blankenship had examined the basement walls of this house in 1989 at the request of James and Nancy Pflasterer, another couple who had been interested in purchasing the home.[2] Mr. Blankenship stated that at the time of his initial inspection in 1989, he was able to peer over the drywall and ascertain that there could be significant structural problems with the cinder block

2. The Pflasterers were renting the home at the time they attempted to purchase it.

walls.[3] The Pflasterers allowed him to remove a portion of the wallboard which revealed cracks at the exterior corners. He advised the Pflasterers that the damage he observed, although significant, could be repaired for approximately $8,000.00. Based on Mr. Blankenship's report, the Pflasterers decided not to purchase the home.

Mr. Blankenship examined the home on behalf of the Boyers on May 27, 1994. This inspection revealed that some of the walls which had been reparable in 1989 would now have to be replaced. Mr. Blankenship estimated the cost of repairing the structure to be approximately $29,000.00.

Subsequently, the Boyers filed suit against Mr. Fitzgerald and Mr. Emmons. In 1997, during the course of litigation, Mr. Blankenship inspected the home again and determined that there had been additional movement in the walls. He stated that the walls which were reparable in 1995 would now have to also be replaced and that the house was in a hydrostatic situation, meaning that it would continue to move until these repairs were made.

On September 5, 1995, Mr. Emmons filed a motion for summary judgment. The motion was granted on May 13, 1997, and the Boyers' motion for reconsideration was denied on July 31, 1998. This appeal followed.

## II.

■ The only issue before this Court is whether the circuit court erred by granting summary judgment in favor of Mr. Emmons. On numerous occasions, we have stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See also* Syllabus Point 1, *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W.Va. 385, 508 S.E.2d 102 (1998); Syllabus Point 3, *Blake v. Charleston Area Medical Center*, 201 W.Va. 469, 498 S.E.2d 41 (1997). In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for

summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* W.Va. R. Civ. P. 56.

■ Upon reviewing the record, we find that summary judgment was appropriate. As noted above, the Boyers essentially contend that Mr. Emmons negligently inspected their house and negligently represented the soundness of the basement walls. The Boyers claim that during his inspection, Mr. Emmons only looked over the drywall in one area and commented that "everything seemed fine." However, an examination of the evidence shows that Mr. Emmons issued a written report subsequent to his inspection and specifically stated that he was unable to inspect the block walls because of the drywall. He also cautioned that there might be a water problem and suggested that certain steps be taken to direct water away from the house. While Mr. Emmons may have given a verbal opinion concerning the walls during his inspection, he gave the Boyers written notice afterwards specifically stating that he did not inspect the walls and that his inspection did not cover items which were concealed or otherwise difficult to inspect.

In addition, the Boyers conducted their own investigation of the house following Mr. Emmons' inspection. Previously, this Court adopted the "independent investigation" doctrine which was first set forth in Syllabus Point 5 of *Jones v. McComas*, 92 W.Va. 596, 115 S.E. 456 (1922):

> Though a purchaser may rely upon particular and positive representations of a seller, yet if he undertakes to inform himself from other sources as to matters easily ascertainable, by personal investigation, and the defendant has done nothing to prevent full inquiry, he will be deemed to have relied upon his own investigation and not upon the representations of the seller.

*See also Cordial v. Ernst & Young*, 199 W.Va. 119, 132, 483 S.E.2d 248, 261 (1996); *Eblin v. Coldwell Banker Residential Affiliates, Inc.*, 193 W.Va. 215, 219, 455 S.E.2d

---

**3.** The Boyers maintain that Mr. Fitzgerald never told them about the inspections previously performed on behalf of the Pflasterers prior to their purchase of the home.

774, 778 (1995); *Rockley Manor v. Strimbeck,* 181 W.Va. 313, 315, 382 S.E.2d 507, 509 (1989). More recently, in *Cordial,* we recognized that this doctrine is not absolute but requires the recital of a long recognized qualification. As we explained,

> 'The mere fact, however, that some investigation is made by the representee is usually held, particularly in the late cases, not to amount in and of itself to a bar to the right to rely upon representations. The representee who attempts investigation may have a right to rely upon the representations where expert knowledge is necessary to an effectual investigation, which knowledge is possessed by the party making the representations, and not by the other. Moreover, if the representee, instead of investigating as fully as he may, makes only a partial investigation and relies in part upon such investigation and in part upon the representations of the adverse party, and is deceived by such representations to his injury, it is held that he has a right to rely on, and may maintain an action for, such deceit. This rule is particularly applicable where the representations were designed to deter further investigation. Furthermore, the fact that one makes an examination or inquiries does not necessarily show that he did not rely on the false representations of the other party.' 37 Am.Jur.2d, *Fraud and Deceit,* § 37 (1968) (footnotes omitted).

*Cordial,* 199 W.Va. at 132–33, 483 S.E.2d at 261–62.

Although the independent investigation doctrine may nŏt absolutely bar the right to rely upon the representations of another party, in this case, Mr. Emmons did not make any representations upon which the Boyers could rely. As discussed above, Mr. Emmons specifically stated in his written report that he did not inspect the block walls in the basement. Thus, we find that there was no issue of fact to be resolved and summary judgment was appropriate. Accordingly, for the reasons set forth above, the final order of the Circuit Court of Cabell County entered on July 31, 1998, is affirmed.

Affirmed.

Judge RISOVICH, sitting by temporary assignment.

Justice SCOTT did not participate.