705 S.E.2d 125

**Frenchie HESS, Jr., Plaintiff Below, Appellee**

v.

**WEST VIRGINIA DIVISION OF CORRECTIONS, Defendant Below, Appellant.**

**No. 35496.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 2010.

Decided Nov. 23, 2010.

Dwayne E. Cyrus, Esq., Jason Eric Wandling, Esq., Shuman, McCuskey & Slicer, Charleston, WV, for Appellant.

Larry O. Ford, Esq., Craig B. Giffen, Esq., Meyer, Ford, Glasser & Radman, for Appellee.

PER CURIAM:

The West Virginia Division of Corrections ("DOC" or "the Appellant") appeals from an Order entered by the Circuit Court of Kanawha County, West Virginia, denying its Motion to Dismiss. The motion was based upon qualified immunity and the Appellee's, Frenchie Hess, Jr.'s, failure to exhaust prison remedies as set forth in West Virginia Prisoner Litigation Reform Act, West Virginia Code §§ 25–1A–1 to –8 (2008), prior to filing the instant action.[1] Based upon a review of the parties' briefs, the record and all other matters submitted before the Court, the circuit court's decision is affirmed.

## I. Factual and Procedural History

On or about January 6, 2009, the Appellee filed a civil action in the Circuit Court of Kanawha County stemming from injuries the Appellee received when he slipped and fell while incarcerated. According to the allegations in the Appellee's Complaint, he was an inmate, who was being housed in the Stevens Correctional Center[2] ("Stevens") located in McDowell County, West Virginia. In mid-January 2007, the Appellee slipped and fell in

---

1. The Court summarily finds that the circuit court did not err in denying the Appellant's motion to dismiss based upon the failure to pursue administrative remedies.

2. According to the allegations, Stevens is owned and operated by the McDowell County Commission. The Appellee was housed there pursuant to a contract entered into between the McDowell County Commission and the DOC.

stagnant water that had collected near the shower facilities at Stevens. He alleges that he was left injured and unattended in stagnant water for several minutes and that the accident caused him to require surgery and sustain "various significant and permanent injuries."

The Appellee averred that

[t]he [n]egligence of WVDOC [the Appellant] included, but was not limited to, the following:

a. Failing to ensure that Stevens Correctional Center had the appropriate number of officers for the size of the prison population;

b. Failing to ensure that Stevens Correctional Center had adequate means to ensure the safety of prisoners; and

c. Failing to ensure that Stevens Correctional Center took proper steps to remedy unsafe conditions.

The Appellant responded by filing a Motion to Dismiss pursuant to West Virginia Rule of Civil Procedure 12(b), arguing, in part, that the doctrine of qualified immunity precluded the Appellee's negligence claim.[3] The circuit court, after hearing, denied the Appellant's motion, determining that the issue of qualified immunity was better left for resolution on a motion for summary judgment. The Appellant filed this interlocutory appeal pursuant to the Court's decision in *Robinson v. Pack*, 223 W.Va. 828, 679 S.E.2d 660 (2009).[4]

## II. Standard of Review

■ The Court reviews a circuit court's denial of a motion to dismiss a complaint under a de novo standard. *See* Syl. Pt. 4, *Ewing v. Bd. of Educ.*, 202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

## III. Discussion

■ The issue before the Court is whether the circuit court erred in refusing to grant the Appellant's Motion to Dismiss based upon the doctrine of qualified immunity.

---

3. The Appellant also asserted that the Appellee failed to provide the requisite pre-suit notice pursuant to the provisions of West Virginia Code § 55–17–3 (2008). The Appellant, however, later withdrew that argument.

4. The Appellee argues that the appeal in this case was untimely as it was filed on December 21, 2009, about eight months after the entry of the April 30, 2009, Order denying the Motion to Dismiss. Therefore, the Appellee argues that the Court should dismiss the case. Significantly, the Appellee raised this same issue in his Response to the Petition for Appeal, which implicitly was rejected when the Court granted the appeal.

In *Robinson*, the Court held in syllabus point two that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." 223 W.Va. at 829, 679 S.E.2d at 661, Syl. Pt. 2. This concept is equally applicable to a denial of a motion to dismiss. *See Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)(quoting, in part, *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))(stating that the Court's decision in *Mitchell*, "unmistakably envisioned immediate appeal of '[t]he denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity.' ").

Further, in *Eblin v. Coldwell Banker Residential Affiliates, Inc.*, 193 W.Va. 215, 455 S.E.2d 774 (1995), this Court was presented with the question of when the appeal time began to run in the context of a summary judgment order that, notwithstanding the absence of language in the order indicating no just reason for delay and an express direction for entry of judgment, was subject to an appeal. The Court opined that such a summary judgment order, "while allowing an aggrieved party to take an immediate appeal, does not require that such an appeal be taken at that time, and an aggrieved party may take an appeal at any time until the final appeal time in the case expires." *Id.* at 222, 455 S.E.2d at 781. In the instant matter, there is no language in the relevant Order before the Court providing for an immediate appeal. Nonetheless, the Court, in *Eblin*, found that the opening of the door to the possibility of an appeal when there is a denial of a motion for summary judgment does not mean that "an appeal must be taken by an aggrieved party within the appeal time after entry of . . . [such] order." *Id.* Likewise, the opening of the door to the possibility of an interlocutory appeal from the denial of a motion for summary judgment or a motion to dismiss based upon qualified immunity pursuant to the Court's decision in *Robinson*, does not signify that an appeal must be taken by an aggrieved party within the appeal time after entry of the order denying the motion. *See id.* Consequently, the Court finds that the Petition for Appeal was timely filed in the instant matter.

**18**

The Appellant argues that qualified immunity applies to the Appellee's Complaint, because it is based solely upon the Appellant's alleged negligence in performing administrative, discretionary acts.

In response, the Appellee argues that the circuit court correctly refused to dismiss his action, finding that the case is better left to summary judgment. The Appellee argues that "the plaintiff's allegations have invoked the WVDOC's insurance coverage, and thus the WVDOC does not enjoy protection from suit via the qualified immunity doctrine as a result." The Appellee further argues that because he has not alleged that the Appellant was engaging in a legislative, judicial, or administrative function involving the determination of a fundamental governmental policy, there is no immunity from suit. Lastly, the Appellee asserts that the Appellant violated clearly established laws of which a reasonable official would have known.[5]

In *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995), the issue of whether a conservation officer and the West Virginia Department of Natural Resources enjoyed qualified immunity, as a matter of law, was before the Court. The appellant was a hunter who sued the conservation officer and the Department of Natural Resources alleging that the officer negligently caused the discharge of another hunter's gun that injured the appellant. *Id.* at 274, 465 S.E.2d at 376. The conservation officer encountered the appellant while investigating a complaint of illegal doe hunting. *Id.* The appellant was with a group of individuals. *Id.* The officer asked the group to lay down their guns and get out their hunting licenses. *Id.* The officer had his weapon drawn in a ready position. *Id.* One of the hunters had his weapon in his lap and when the officer attempted to remove the firearm from the hunter's lap, the firearm discharged and the appellant was

shot. *Id.* The lower court found that the defendants were entitled to qualified immunity for the discretionary actions of the conservation officer which were performed within the scope of employment. *Id.*

 The Court, in upholding the applicability of qualified immunity, acknowledged that qualified immunity is "a different kind of limited immunity to the State and its law enforcement officer for discretionary acts negligently committed within the scope of his employment." *Id.* at 277, 465 S.E.2d at 379. Thus,

> "the thrust of any attempt to establish liability against a public official is the violation of some duty attendant to the official's office and a resulting harm to the plaintiff. This analysis essentially adopts the common law tort concept that liability results from the violation of a duty owed which was a proximate cause of the plaintiff's injury. *See, e.g., Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981); *Atkinson v. Harman*, 151 W.Va. 1025, 158 S.E.2d 169 (1967). The one difference in [qualified] immunity cases is that the official's act must be shown to have violated clearly established law of which a reasonable person would have known."

*Id.* at 277–78, 465 S.E.2d at 379–80 (*quoting State v. Chase Sec., Inc.*, 188 W.Va. 356, 364, 424 S.E.2d 591, 599 (1992)).

 In syllabus point six of *Clark*, this Court held:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va.Code § 29–12A–1, et seq.,[6] and against an officer of that

---

5. There are no allegations in the Appellee's Complaint regarding the violation of clearly established laws. For the first time on appeal, the Appellee contends that the Appellant violated the Eighth Amendment to the United States Constitution. The Appellee asserts that the Appellant's failure "to ensure the safety of the Plaintiff while it was incarcerating him at the Stevens Correctional Center[,]" is tantamount to violating the

Appellee's right to be free from cruel and unusual punishment.

6. Initially, the Court notes that the West Virginia Governmental Tort Claims and Insurance Reform Act ("the Act"), West Virginia Code §§ 29–12A–1 to –18 (2008), applies to "the political subdivisions of this State[,]" such as a county commission or municipality. W. Va.Code § 29–12A–2 and § 29–12A–3(c). By definition, the

department acting within the scope of his or her employment, *with respect to the discretionary judgments, decisions, and actions of the officer.*

195 W.Va. at 274, 465 S.E.2d at 376 (footnote added) (emphasis added). Similarly, in *Robinson,* the Court held in syllabus point three that

> "[g]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Syllabus, in part, *Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465 (1987).

*Robinson,* 223 W.Va. at 829, 679 S.E.2d at 661, Syl. Pt. 3.

The Court also analyzed the doctrine of qualified immunity in *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992). In *Chase,* a third-party complaint filed against the Governor, the Treasurer, and the Auditor, who were members of the State Board of Investments, was dismissed based upon qualified immunity. *Id.* at 357, 424 S.E.2d at 592. The claim against the Board members was that their approval of an investment transaction made the Board members liable for a loss of approximately $7.1 million resulting from the transaction. *Id.* at 358, 424 S.E.2d at 593. On appeal, the Court upheld the dismissal of the third party complaint. *Id.* at 357, 424 S.E.2d at 592.

▮ In reaching this decision, the Court followed the decision reached by the United States Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Supreme Court set forth the following qualified immunity test: " 'Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly estab-

State of West Virginia is not considered a "political subdivision." W. Va.Code § 29–12A–3(e)(" 'State' does not include political subdivisions."). Specifically, West Virginia Code § 29–12A–3(e) defines "State" as follows:

"State" means the state of West Virginia, including, but not limited to, the Legislature, the

lished statutory or constitutional rights of which a reasonable person would have known.' " *Chase Sec.,* 188 W.Va. at 362, 424 S.E.2d at 597 (*quoting Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). Thus, based upon the foregoing test in *Harlow,* the Court held in the only syllabus point:

> A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va.Code, 29–12A–1, *et seq.,* is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.

*Chase Sec.,* 188 W.Va. at 356–57, 424 S.E.2d at 591–92, Syllabus, in part.

Likewise, the doctrine of qualified immunity is equally applicable to actions brought only against state agencies, such as the Appellant in the instant case. In *Parkulo v. West Virginia Board of Probation and Parole,* 199 W.Va. 161, 483 S.E.2d 507 (1996), the plaintiff, who was abducted, raped and beaten by a parolee brought an action against the parole board and the Division of Corrections. *Id.* at 165, 483 S.E.2d at 511. The plaintiff alleged that the Board, in granting parole, and the Division of Corrections, in supervising the parolee while he was on parole, violated their respective statutory duties, acted outside the scope of their respective official responsibilities, and, through their respective employees, acted negligently, in bad faith, and in a wanton and reckless manner. *Id.*

The Court remanded the case for a determination of whether there was a waiver of the immunities in the relevant State insurance policy as that had not been addressed by the circuit court. *Id.* In reaching this decision, however, the Court held that

> supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. "State" does not include political subdivisions. *Id.* Therefore, the Appellant is not within the purview of the Act.

[u]nless the applicable insurance policy otherwise expressly provides, a State agency or instrumentality, as an entity, is immune under common-law principles from tort liability in W. Va.Code § 29–12–5 actions for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an *administrative function* involving the determination of fundamental governmental policy.

199 W.Va. at 163–64, 483 S.E.2d at 509–10, Syl. Pt. 6. The Court explained in *Parkulo*, "we are addressing the immunity of the State and its instrumentalities in the context of the exercise of judicial, legislative, and executive (or administrative) policy-making acts and omissions." *Id.* at 176, 483 S.E.2d at 522; *see J.H. v. W. Va. Div. of Rehab. Servs.*, 224 W.Va. 147, 680 S.E.2d 392 (2009).

Based upon the foregoing, in analyzing whether qualified immunity bars the instant negligence Complaint, the first determination that must be made is whether the relevant insurance policy waives the defense of qualified immunity. *Parkulo*, 199 W.Va. at 163–64, 483 S.E.2d at 509–10, Syl. Pt. 6. In the instant case, the insurance policy at issue, a copy of which was attached to the Appellant's Motion to Dismiss, does not waive the Appellant's qualified immunity. Rather, the Certificate of Liability Insurance to the policy expressly provides that "the additional insured [Division of Corrections] does not waive any statutory or common law immunities conferred upon it."

Thus, under the *Parkulo* analysis, because there is no waiver of the Appellant's qualified immunity defense in the relevant insurance policy, the Appellant is immune under common law tort principles "for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an administrative function involving the determination of fundamental governmental policy." *Id.* Consequently, the analysis turns on whether the Appellee's claims involve negligence for acts from the State agency's exercise of discretionary, administrative policy-making. *See id.* To that end, the Appellee alleged that the Appellant was "charged with the non-delegable duty of providing a reasonably safe environment for prisoners." The Appel-

lee further alleges that he "slipped and fell on stagnate [sic] water that had collected near the shower facilities," and that he was "left injured and unattended in stagnate [sic] water for several minutes." Based upon these factual allegations, the Appellee avers that the Appellant was negligent in failing to have the appropriate number of officers present at Stevens, in failing to ensure that Stevens took the adequate means to ensure the safety of the prisoners, and in failing to ensure that Stevens took proper steps to remedy unsafe conditions. The Appellee's allegations pertaining to having the appropriate number of officers present at the facility, as well as having the means to ensure the safety of the prisoners *may have* stemmed from administrative, policy-making acts. It is unclear, however, as to how the Appellee's averment that the Appellant failed to take steps to remedy unsafe conditions stems from any discretionary, administrative policy-making act or omission. *Id.* Once more facts are ascertained, it may be that the substance of this allegation may also have involved administrative, policy-making act(s).

Because it is not apparent from the Complaint or the record in this case as to whether all of the Appellee's allegations involve "the exercise of an administrative function involving the determination of fundamental governmental policy," which is the guidepost set forth by the Court in *Parkulo*, the Court concludes that the circuit court did not err in allowing further factual development of the case before deciding the issue of whether qualified immunity precludes the Appellee's claims. 199 W.Va. at 163–64, 483 S.E.2d at 509–10, Syl. Pt. 6.

## IV. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Kanawha County, West Virginia, is hereby affirmed.

Affirmed.